# Davis *versus* Stuard.

1. It is not error for the court to overrule a motion for leave to file a special plea where the plaintiff would not be estopped by the facts set out in such plea, and the defendant may give the said facts in evidence under the general issue.

2. A sale of a share in certain oil lands having been effected, the vendee subsequently claimed to rescind the contract on the ground of fraud, and brought suit against the vendor to recover the consideration money. The court charged that the pivotal point of the case was whether the sale had been effected by means of false representations, false in fact, and made fraudulently, willfully and recklessly by the vendor. *Held*, that this instruction did not constitute error.

3. Where a vendee seeks to rescind a contract on the ground of fraud, he must indicate his intention to rescind within a reasonable time and without undue delay. It is not error for the court to instruct the jury in general terms that such is the law. If the vendor desires more specific instructions he should secure them by putting proper points.

4. Where in such case the vendee has neglected to bring suit to recover the purchase money until the expiration of nearly six years after the sale, this circumstance may go the jury to prove a failure upon the vendee's part promptly to rescind the contract.

5. In order to prove when the suit was begun, the vendor may in such case put the original summons in evidence.

99      295
24 SC ³342

99      295
28 SC ³526
99      295
29 SC ³147
99      295
32 SC ³344

99      295
41SC ³651

[Davis *v.* Stuard.]

January 5th 1882. Before Sharswood, C. J., Mercur, Gordon, Paxson, Trunkey, Sterrett and Green, JJ.

Error to the Court of Common Pleas No. 2 of *Philadelphia county :* Of January Term 1879, No. 262.

Assumpsit, by John Stuard, against Marcus A. Davis. The narr. averred that in 1865 the defendant induced the plaintiff to pay him $1,000 for the purchase of a one-sixtieth interest in 685 acres of land in West Virginia, to be conveyed to a company to be incorporated and known as the Monongalia Land and Oil Company ; that defendant represented it was rich oil territory, he having himself visited it and the adjoining territory ; that the defendant would pay over said $1,000 to the company, which was composed of responsible men, and that plaintiff should be put in " on the ground floor," with the same privileges as the defendants and the other original parties. And the plaintiff, confiding, etc., paid the sum of $1,000, whereas the defendant did not fulfil his representations and promises, etc.

Pleas, non assumpsit, payment with leave, etc., and a special plea specifically denying the averments of the narr., and setting forth that a deed of said tract of 685 acres was, by order of the stockholders of said company, made to two of their number, who had executed a declaration of trust in favor of the equitable owners, in the proportions owned by them, including the plaintiff, whose $1,000, the defendant paid over to his principals.

After the filing of this special plea, in April 1875, the plaintiff executed and tendered to the defendant a conveyance of all his interest in said land, whatever the same might be, and demanded a return of the $1,000, which was refused.

When the case was called for trial, before Fell, J., before the jury was sworn, the defendant asked leave to file an additional special plea, averring that in April 1868, the plaintiff, being called as a witness before an examiner in a certain equity suit to which the defendant was a party (the plaintiff not being a party) the plaintiff testified on his voir dire that he had purchased said one-sixtieth interest for $1,000, and that he did not expect to receive or recover, from any party to said cause, any of the said sum of $1,000, and that he did, then and there, renounce and disclaim any right or expectation of recovering any portion of said sum from this defendant ; whereupon the plaintiff, having thus qualified himself, was admitted as competent to testify, and did testify in said cause.

Upon objection the court refused leave to file the said special plea. (1st assignment of error.)

The plaintiff admitted that at the time he purchased the said interest and paid to the defendant the $1,000, the defendant told him that the said 685 acres of land about to be put into the Monongalia Oil Company was portion of a larger tract which

[Davis *v.* Stuard.]

the defendant and others had previously purchased. In other respects the testimony on behalf of the plaintiff and the defendant was conflicting, the former testifying in support of the averments of the narr. and that his first knowledge of the alleged deed and declaration of trust in his favor, was derived from the special plea filed in April 1875. The defendant denied all false representations or concealment, and testified that the plaintiff sought the investment—it being a time of general speculation in oil lands—and that the reason why the land was not developed was because the plaintiff and others failed to pay assessments levied by the company on the shareholders to provide working capital. The plaintiff testified that within a few months after he paid the money he demanded of the defendant the certificate in the Monongalia Oil Company which he had been promised, and, failing to get it, he demanded his money back. The defendant denied this, testified that he had paid the $1,000 to the Monongalia Oil Company, and further proved by his counsel (under the general issue), that plaintiff had testified in 1868, in the equity cause as set forth in the above recited special plea, which the court had refused to allow to be filed.

The defendant, for the purpose of showing that the plaintiff did not commence his action until April 1871, almost six years after his purchase from the defendant, offered in evidence the summons in this suit, issued April 11th 1871. Objected to; objection sustained; exception. (4th assignment of error.)

The court affirmed several points presented by the planitiff, substantially to the effect that if the jury found from the evidence that the parties were not on terms of equality to judge of the land, and if the defendant knowingly made false representations to plaintiff, and plaintiff was thereby induced to pay the money, the verdict should be for the plaintiff; with the qualification, in the answer to each point, if they also found that the plaintiff, when he first discovered the alleged fraudulent misrepresentations, rescinded the contract within a reasonable time.

In the charge, the court, after referring to the facts, said, inter alia :

" I shall leave the testimony to you without review ; [but right here is the pivotal point of the case : Was the sale of the share to Mr. Stuard effected by means of false representations, false in fact and made fraudulently or willfully and recklessly by Mr. Davis to Mr. Stuard ?]

" The testimony as to the actual value of the land, the indications of oil, the examination made, the value of the land in comparison to other lands, the question of notice given by Mr. Davis to Mr. Stuard of the meetings of the Monongalia Oil Com-

[Davis *v.* Stuard.]

pany, or of the meetings of the sixty subscribers, is unimportant except as it goes to the question of good faith in the transaction. It is nothing that the land was entirely valueless, that the indications of oil were deceptive, except that its throws light upon the question of Mr. Davis' knowledge and good faith. You are not to make a new bargain for these parties. You are not to shift the burden of a loss from one innocent party to another. If John Stuard, in the hope of gain, invested his money in this company upon the faith of mistaken representations, honestly made, he must bear his loss. If Mr. Davis, however hopeful or over-sanguine he may have been, made these statements in good faith and honestly, he is not responsible. He is only liable in the event of their being false and having been willfully, recklessly and fraudulently made."

Verdict and judgment for the plaintiff for $1,000. The defendant took this writ of error, assigning for error, inter alia, the refusal of the court to allow the special plea to be filed at the trial; the rejection of the offer of the summons in evidence; the instructions of the court in answering the plaintiff's points, and the portion of the charge quoted in brackets.

*William H. Ruddiman*, for the plaintiff in error.—The plaintiff failed to show any fraudulent representations. In no part of the evidence can it be shown that the land in which Stuard got an interest is *not* rich oil territory, nor, if the proper and necessary assessments had been contributed by him and others, that it would not have been productive and valuable oil land. Even if there had been evidence of any false representations, still that was not the "pivotal point of the case." The true pivotal centre was: did Stuard promptly, after discovering such representations to have been made, repudiate them and seek to cancel the contract; or did he wait through long delays until it was impossible for Davis to be placed in his original position with respect to the land, and, after a slumber of six years, take steps to rescind. The jury could not fail to have been misled by the portion of the charge assigned for error.

. The special plea offered at the trial was a valid one, and permissible to be filed under the statute of amendments. If demurrable, it should have been allowed, nevertheless, to pass to that stage of inquiry and adjudication; and not have been summarily refused place in the case at all.

In any view of the case, it was proper for defendant to put in evidence, as part of the record, the summons which showed when the suit was commenced. Especially was it important, when one of the conspicuous elements of the proceeding was the reasonableness or unreasonableness of the time within which the plaintiff below had asserted his right to rescind his contract or

[Davis *v.* Stuard.]

taken steps to recover his money. The summons showing that the suit was commenced just one day within six years after the purchase by plaintiff below, it was the right of the defendant to ask the judge to instruct the jury that, in taking into consideration the question which was left to them to find, whether or no plaintiff had rescinded his contract in a reasonable time, they might and should have regard to the fact of the long delay which had occurred in bringing suit for that purpose.

*E. Coppée Mitchell* (*B. H. Haines*, with him), for the defendant in error.—The special plea was a mere statement of *evidence*, and, as such, it was properly rejected : Stephen on Pleading 312. If the plaintiff below, had, in another suit in which he was not a party, testified as is alleged in this special plea, that would not be an estoppel against him in this suit. Miles *v.* Miles, 8 W. & S. 137. The defendant did, in fact, offer and submit all the evidence he had of the facts contained in the plea.

The writ of summons was rightly rejected as immaterial. It was offered to show delay in rescinding the contract. But it was no evidence of that. The bringing of the suit was not the rescission of the contract. Notice of rescission was given three months after the money was paid, and the cause of action arose then. One has the legal right to wait before bringing suit until the last day of the time allowed by the statute of limitations, and his not suing before that is not evidence against the validity of his claim. There may be good reasons for delay, and in this case the plaintiff was not permitted, because objected to by defendant, to explain the delay. The summons is only evidence of the date of bringing the suit : but that was not the matter in dispute.

Mr. Justice TRUNKEY delivered the opinion of the court, February 6th 1882.

It was not error to overrule the defendant's motion for leave to file the special plea. If, in an equity proceeding, the plaintiff testified to the facts set forth in the plea, the defendant was not misled or injured thereby so that the plaintiff is now estopped from asserting the truth. That testimony, embodied in a plea, would be no bar to this action. Under the general issue the defendant had the right to prove the facts as set out in the plea, if he could, but the evidence need not appear on the record.

The remark of the court which is made the sixth specification of error,—namely, " But right here is the pivotal point of the case : Was the sale of the share to Mr. Stuard effected by

[Davis *v.* Stuard.]

means of false representations, false in fact and made fraudulently, or willfully and recklessly by Mr. Davis to Mr. Stuard ?"
—could not have misled the jury, even if this question was not the pivotal point.    It was first in order before any other proof could be considered, and, unless the jury affirmed it, the plaintiff had no right of action.    Until this was established, it would have been idle to inquire whether the plaintiff rescinded the contract and gave the defendant notice of the rescission, promptly or otherwise.    The right of Stuard to rescind rested upon the fraud of Davis in luring him into the purchase.

We think the instructions to the jury were correct and properly applied to the evidence.    The testimony in support of the plaintiff's case was of such weight as to require its submission.

What was said in the answers to points respecting the rescission of the contract and a tender back of the interest purchased, was pertinent and just.    Stuard testified that he paid the money in April 1865, and Davis promised to give him a certificate for the share of stock; that from time to time Davis sent him to divers places for the certificate, and on going to them he found no certificate or person to give it; that at last he was sent to the old Ledger building, where he found no secretary or certificate, and at once went to Davis and demanded his money, which Davis refused to give.    This was within three months of the time of the purchase, and had it not been disputed, the court should have charged that Stuard had received nothing to return, and that the contract was rescinded in a reasonable time. At a later stage in the trial, Stuard said that he never heard of the alleged declaration of trust till in October or November 1875 ; and if this was true, a tender of the re-conveyance then was sufficient, although the suit was pending.    What is a reasonable time or undue delay, when the facts are not disputed, is a question of law to be determined by the court : Morgan *v.* McKee, 77 Pa. St. 228.    When the facts are in dispute, the question necessarily goes to the jury, and if a party wishes specific instructions respecting reasonable time or undue delay, he may secure them by putting proper points.    Here no instructions were asked, and nothing was said to mislead.

But one other point seems to require remark.    The defendant offered the summons for the purpose of showing when the action was commenced, and we are of opinion that the offer was admissible.    Upon the questions of fraud and prompt rescission the testimony was conflicting.    Delay for six years to bring suit would bear against the plaintiff, unless he explained it; while, if the suit was promptly commenced upon discovery of the fraud, it would corroborate his allegation of immediate rescission.    In such cases it has been the practice, if the date of bringing suit is not admitted, to show it by producing the writ.

[Moore v. Pennsylvania R. R. Co.]

It is an item of evidence which a party has the right to have considered. The proof of the alleged fraud and rescission may be so strong, or so weak, that the jury would give no weight to the date of suit in arriving at their conclusion; but the court may not determine this. The fourth specification of error is sustained.

Judgment reversed, and venire facias de novo awarded.