## Muehlhof, Appellant, v. Boltz.

*Equity—Contract—Rescission—Discovery—Costs—Dismissal of bill.*

Where a bill in equity for the rescission of a contract by reason of fraud fails as a whole, but a portion of it is sustained as a bill for discovery, the bill may be dismissed with costs imposed upon the defendant.

*Equity—Equity practice—Amendment of bill.*

Where an amendment to a bill in equity is moved and objected to and the hearings continued without any disposition of the amendment having been made, the court will not allow the amendment after the hearings have been closed.

*Contract—Rescission—Laches.*

The rescission of a contract must be applied for promptly and if possible while the parties can be restored to their original position.

Argued Feb. 12, 1906. Appeal, No. 70, Jan. T., 1605, by plaintiff, from decree of C. P. Schuylkill Co., May T., 1904, No. 4, dismissing bill in equity in case of Gustav A. Muehlhof and Charles Franklin Muehlhof, trading as Muehlhof Brothers, v. William K. Boltz. Before MITCHELL, C. J., FELL, BROWN, POTTER and ELKIN, JJ. Affirmed.

Bill in equity to rescind a contract.

Before SHAY, J.

The court found that the evidence did not sustain the charge of fraud and misrepresentation, but that the defendant failed to disclose to complainants prices at which he was furnishing yarn until April, 1904.

The court dismissed the bill, but imposed the costs upon the defendant.

*Error assigned* was the decree of the court.

*George M. Roads*, with him *John F. Whalen*, for appellants. —The amendment should have been allowed : Miller v. Billington, 184 Pa. 583 ; Pottsville Water Co. v. Schuylkill Nav. Co., 11 Pa. C. C. Rep. 635 ; Bailey v. Pittsburg Coal R. R. Co., 139 Pa. 213 ; Simonds v. Parker, 42 Mass. 508 ; Daley v. Iselin, 212 Pa. 279 ; Comth. v. Crum Lynne Iron & Steel Co., 27 Pa. Superior Ct. 508 ; Hughes v. Antill, 23 Pa. Superior Ct. 290 ; Ins. Co. v. Storrs, 97 Pa. 354 ; Jeannette Borough v. Roehme, 9 Pa. Superior Ct. 33.

If the vendor permitted the vendee who had no knowledge of the business to contract with him on the faith of his statements of value, he was bound not merely to believe, but to know that they were true : Bower v. Fenn, 90 Pa. 359 ; Lake v. Weber, 6 Pa. Superior Ct. 42 ; Jack v. Hixon, 23 Pa. Superior Ct. 453 ; Brady v. Standard Loan Assn., 14 W. N. C. 419 ; Wilson v. Getty, 57 Pa. 266 ; Keemle v. Conrad, 35 Legal Int. 262 ; Brotherton Bros. et al. v. Reynolds, 164 Pa. 134 ; Nace v. Boyer, 30 Pa. 99 ; Rockafellow v. Baker, 41 Pa. 319 ; Cummings's Appeal, 67 Pa. 404.

*Edmund D. Smith*, with him *Arthur J. Pilgram*, for appellee, cited as to laches : Howard v. Turner, 155 Pa. 349 ; Hilliard v. Allegheny Geometrical Wood Carving Co., 173 Pa. 1 ; Mahaffey v. Ferguson, 156 Pa. 156.

Cited as to use of the property after rescission : Dunn v. Columbia Nat. Bank, 204 Pa. 53 ; Fowler v. Meadow Brook Water Co., 208 Pa. 473 ; American Home Savings Bank Co. v. Trust Co., 210 Pa. 320.

Cited as to inability to restore the status quo : Lynch's App., 97 Pa. 349 ; Graham v. Pancoast, 30 Pa. 89 ; Nace v. Boyer, 30 Pa. 99 ; Du Bois Boro. v. Water Co., 176 Pa. 430.

OPINION BY MR. CHIEF JUSTICE MITCHELL, May 7, 1906 :

Appellants purchased from defendant the leasehold of a mill and the stock on hand, contracts for yarn, etc., in short, the

plant as a going business. This is a bill to rescind the sale on the ground of fraud in its procurement. The learned judge below considered a large mass of evidence with manifest care and patience and there has been nothing brought forward here to require an extended discussion of the details.

The facts may be summarized briefly. After several months of negotiation appellants made the purchase in March, 1903, took immediate possession and ran the mill until the middle of July, when they stopped work, as averred, for want of yarn, and remained closed until September, when they resumed, but not on full time. In April, 1904, this bill was filed.

The bill charged that appellants having no experience in the milling business, informed the defendant that they would rely upon him for all information in regard to it. They therefore asked the court to apply the rule that where a vendor permits the vendee to contract with him on the strength of his statements he is bound not merely to believe but to know that they are true. The court so held, citing, inter alia, Bower v. Fenn, 90 Pa. 359.

The principal representations complained of were, first, that the vendor was doing a business of $65,000 a year, on which there was a profit of four per cent, and plaintiffs could make the same. As to this the court found that the representation was made as to the amount of business and the profit, but it was not shown to be untrue and there was no guarantee that plaintiffs could make such profit.

2. That vendor had contracts already on hand for finished products which would keep the plant running for two years. This the court found was not proved. On the contrary, the representation and the agreement were that he had some contracts still running which he would turn over to appellants, and that he had done so.

3. That vendor had contracts for yarn sufficient to enable the mill to fulfill all the contracts for manufactured goods, and these he would turn over to the appellants. This was really the hinge of the case, as it was the failure of the supply of yarn upon which the bill rested the compulsory stoppage of the mill in July. The court found that the representation as to yarn was only that the vendor had contracts which he thought would carry him through the season. These he did not turn

over, because the other parties to the contracts would not agree
to an assignment of them while the price of yarn was rising.
Instead, therefore, of turning over the contracts, defendant con-
tinued to order yarn in his own name, delivered it to appel-
lants, and bought yarn for appellants in the open market until
they owed him over $3,000 and he refused to furnish more.
The court therefore found that whatever failure there was to
keep the agreement as to the yarn and the yarn contracts was
due to appellants themselves.

Some other and minor representations were considered by
the court, but he found either that they were not made or if
made were not shown to be untrue, and they do not require
discussion here.

One matter the court found in appellants' favor, though his
action upon it is argued as error. Defendant purchased yarn
for appellants, as discussed under paragraph three, supra, but
in rendering bills to appellants he failed to inform them of the
prices he paid, and whether they were under his contracts or for
purchases in the open market. This information the court
held that he should have furnished, saying " We are of the
opinion, therefore, this portion of complainant's bill is sus-
tained, but as they are now in possession of this information
through the evidence of the defendant, no order of court is
now necessary, but from the fact that complainants only ob-
tained the desired details to which they were legally entitled,
by the filing of their bill, defendant should pay the costs of
this proceeding." The court therefore in dismissing the bill
decreed that the defendant should pay the costs. Appellants
argued that this finding requires that the bill should have been
sustained and an account decreed. It is quite true that a
plaintiff who has established his cause of action, as of the time
his bill was filed, is entitled to have a decree in his favor even
though it may appear that the further aid of the court may not
be required at the time of the decree : Gray v. Citizens' Gas
Co., 212 Pa. 473. But the present case does not come within
this principle. The cause of action set up in the appellants' bill
was fraud in the inducements to the sale which entitled appel-
lants to rescind. The proof failed. The fraud alleged was
not shown, and the facts on the main issue were all found
against the plaintiffs. But the court found that though there

was no such fraud in the inception of the agreement as entitled plaintiffs to rescind, and though defendant was in no default before August, when he received a letter asking for information as to the contracts and prices for yarn, yet he had at that time failed to furnish the full information as to those items proper to be known in the final settlement between the parties. The bill therefore as a whole failed, but a subordinate part of it might have been sustained as a bill for discovery had it been filed for this purpose only and its purpose would have been accomplished and a decree for costs would have been all the relief the plaintiffs required. The court found this was the state of facts in the case, and decreed accordingly. We see no error in this action.

On the whole case the court was of opinion that none of the material allegations of fraud were established, " and in many the weight of the evidence is on the side of the defendant. Boltz received but $3,000 in cash, was secured for $2,000 more, which left a balance of $4,100 of the purchase price of this plant unsecured. He pledged his own credit in the purchase of the raw material, and parted with his stock on hand with no security but the honesty of the complainants, of which there is no question. Surely under this undisputed state of the case, it must be apparent that he had a deep interest in the success of these young men, and we find on the subjects of complaint we have considered there was no fraud. With all these alleged subjects of complaint it will be noticed that complainants operated the mill a whole year and never took any legal steps until Boltz sent them the bill of March 25, 1904, showing their indebtedness to him, when their letter declaring a rescission followed on March 31, 1904, and this bill about the 2nd of April."

After this summary the learned judge continued : " There is one question still to be considered and that is the representation as to the machinery. There was no paragraph in the original bill as to false representations concerning the machinery, and no evidence taken on that point until some considerable time after taking of testimony had begun, and always under defendant's objection that there was nothing in the bill to warrant such inquiry. On May 4th, 1904, complainants asked for a rule to show cause why an amendment should not be allowed, which was served, but never disposed of, and was brought up

at the final hearing for disposition. . . . This rule for amend-
ment should have been disposed of before the hearing to ad-
journ, and as defendant closed, relying upon his objections
which were well taken, we think it would be inequitable to al-
low this amendment now."

In refusing the amendment the learned judge added the
further reason that for any misrepresentations as to the ma-
chinery, appellants would have an adequate remedy at law in
the defense to suits on the notes or the mortgage. Whether
this is so or whether having failed to make it, as they might
have done, a part of their present case, it is now res adjudicata,
we express no opinion. On the ground stated by the learned
judge the amendment was offered too late and was properly
refused for that reason.

The court further based its dismissal of the bill on the delay
in filing it, and on the impossibility of restoring the status quo.
After referring to the rule that rescission must be applied for
promptly and if possible while the parties can be restored to
their original position (citing Howard v. Turner, 155 Pa. 349 ;
Mahaffey v. Ferguson, 156 Pa. 156 ; and Fowler v. Meadow
Brook Water Co., 208 Pa. 473), he said, as early as August 15,
1903, "complainants were alleging fraud and breach of con-
tract, and yet they continued to operate the mill until Boltz
attempted to collect their indebtedness to him on March 25,
1904, a period of seven months, when they declared rescission,
and even then kept in possession and operated the mill. Their
notice of rescission came too late. . . . At the time of the offer
of rescission, complainants were indebted to defendant in the
sum of $2,376.11 for stock furnished them by defendant, and
for material ordered by defendant on his own credit, and on
which he was personally liable, and turned over to complain-
ants, and one of the promissory notes given in payment of this
plant had already been indorsed over to a third person. In
their letter of rescission, there is no mention of this, no offer
to pay this or to make any provision for the same, and com-
plainants had also used the machinery for a period of one year.
The status quo could not be restored, was not attempted to be
restored, and we are clearly of the opinion rescission in this
case is out of the question."

The law as to both these grounds is correctly stated, and

either by itself would suffice to sustain the dismissal of the bill, but as the fraud which was the necessary basis of relief under any view, was found not to exist, it is not necessary to go farther.

Decree affirmed.