**O'Connor v. Brown & Park,
Trad. as Cook Beverage Co.**

*Vincent A. Cirillo,* for plaintiffs.

*Desmond J. McTighe,* for defendants.

HONEYMAN, J., June 10, 1971.—In the original cause of action, plaintiff is seeking to recover moneys allegedly owed him as the balance due on the agreed price for the sale of a beer distributing business for the total consideration of $229,000. The original written contract was entered into on October 9, 1964, between original owner-plaintiff and buyer Brown and Park, Inc., and guarantors Robert and Jane Brown and Thomas and Eileen Park. Under the schedule attached to the contract, payments were to be made in installments which was done over the years until payments ceased with a total remaining balance due of $39,400.

The matters now before the court are preliminary objections by plaintiff to defendants' new matter and counterclaim. Defendants, Mr. and Mrs. Park, in their new matter, are asserting fraud in the inducement in entering into the original contract, plus a counterclaim in trespass alleging libel and slander by plaintiff in attempting to collect the debt. After having reviewed the pleadings, briefs submitted and oral argument before the court, it is concluded that plaintiffs' preliminary objections to the new matter and counterclaim should be sustained.

This controversy condenses itself into two major issues: Has defendant waived his right to object to the legality and enforceability of the contract by making periodic timely payments for approximately five years after the contract was entered into; and is it procedurally permissible to counterclaim in the form of a trespass-oriented cause of action in libel and slander when the original cause of action is in assumpsit?

In affirmatively answering the first question, it is abundantly clear that the interposition of fraud in the inducement is an attempt by defendant to rescind the contract upon which he had been making timely payments. The Pennsylvania Supreme Court recently had occasion to rule in a factual situation akin to the one at bar and said in Fichera v. Gording, 424 Pa. 404, citing 8 Pa. L. Encyc. §319, page 337:

"When a party discovers facts which warrant rescission of his contract, it is his duty to act promptly, and, in case he elects to rescind, to notify the other party without delay, or within a reasonable time. If possible, the rescission should be made while the parties can still be restored to their original positions. Failure to rescind within a reasonable time is evidence, and *may be conclusive evidence,* of an election to affirm the contract." (Italics supplied.)

Applying this statement of the law to the facts of this controversy, we find that the misrepresentations claimed as being a fraudulent inducement were either obviously evident to defendant initially, or easily ascertainable at or immediately after the time of the sale. These factors, if promptly raised upon discovery, and subjected to the requisite tests of proof, may very well have given defendant cause to rescind the contract. However, it was not until some five years after the making that defendant, in the form of new matter, seeks to interject these factors in his defense. Relying upon the Fichera case, supra, the Restatement, Contracts §483, and a long line of Pennsylvania decisions embracing this position, the court will sustain plaintiffs' preliminary objection to the new matter as being untimely advanced in the order following this opinion.

Turning now to the counterclaim, we find a more difficult proposition is presented, especially in light of the recently amended Pennsylvania Rules of Civil

Procedure, 1020(d)(1) which permits joinder of trespass and assumpsit counts in one action at law. This recent amendment is evidence of the modern trend to avoid a multiplicity of suits through what is liberally construed to be a more efficient judicial procedure. Underlying this notion in rules of this type is the rationale that where one occurrence or series of occurrences gives rise to a number of causes of action between or among the same parties, separate suits based on the antiquated tort and contract dichotomy are impractical or inefficient.

In keeping with the contemporary view Pa. R. C. P. 1031 permits a counterclaim in trespass where the original cause of action was in assumpsit. More especially, however, in Dedo v. Wolfe, 115 Pitts. L. J. 199 (1967), and Kemmerer v. Kemmerer, 18 Bucks 528 (1968), it was held that,

"In a contract action, the defendant may not counterclaim in tort upon a cause of action not connected with the contract."

Therefore, it is manifest that a connection with the original contract cause of action is a mandatory prerequisite.

"In an action of assumpsit, the defendant may counterclaim in trespass for a cause of action arising out of the same transaction as that on which the plaintiff sues": Goodrich-Amram Supplements, Vols. 1 and 2, page 320.

The question remains, does an alleged slander and/or libel made pursuant to collecting a delinquent debt arise out of the same transactions as that which gave rise to the original cause of action on the debt. In 2B Anderson Pa. Civ. Prac., at page 61 the term transaction is defined as

". . . any combination of acts and events which when viewed in one aspect results in the plaintiff's

right of action and viewed in another results in the defendant's right of action. It applies to any dealings of the parties resulting in a wrong, without regard to whether the wrong is done by violence, negligence, or breach of contract."

In an action by the seller to recover the balance of the purchase price from the buyer, the latter cannot counterclaim for damages caused by alleged slanderous statements made by plaintiffs as the result of subsequent disputes between the parties over the terms of the contract. Slander was not associated with the original making of the contract and it is not to be regarded as arising from the same transaction from which plaintiffs' cause of action arose: Norristown Ford Co. v. Metropolitan Auto Dealer, Inc., 88 D. & C. 546 (1954). This decision was subsequently relied upon in part in Girard Discount Co. v. Layton, 36 D. & C. 2d 560, 566 (1965), wherein it was held that while trespass counterclaims are, without doubt, permitted in assumpsit causes of action, the "counterclaim" which arises from alleged slander in subsequent disputes between the parties concerning the terms of the originally sued upon contract is not one which Pa. R. C. P. 1031 is designed to include.

Finally, in Norristown Ford Company v. Metropolitan Auto Dealer, Inc., 88 D. & C. 546, 549 (1954):

"Unless there is an intrinsic part of defendant's counterclaim interwoven with the specific transaction sued upon, this counterclaim must be disallowed. Here the facts averred in defendant's counterclaim are neither an intrinsic part of his defense to the contract action, nor are they applicable to this suit in assumpsit. Defendant's cause of action as stated in his counterclaim did not arise at the time the parties entered into the oral agreement which is now the basis of plaintiff's suit. The charge of slander by defendant was the

result of subsequent disputes between the parties concerning the terms of their contract."

We believe the conclusion to be inescapable, that the defendant's counterclaim is not born of the same transaction nor occurrence which gave rise to plaintiff's cause of action in assumpsit. By so holding, we do not act in contravention of the liberal policy of the contemporary trend in civil procedure, because we have adhered to the rationale behind the rule. Precedent is on the side of plaintiff as well as the philosophy behind the rule; therefore, his preliminary objection to the counterclaim will be upheld.

## ORDER

And now, June 10, 1971, plaintiff's preliminary objections to defendant's new matter and counterclaim are sustained, and same is dismissed.